Mr. Schmidt. Yes, Your Honor. May it please the Court. Counsel. Counsel. Your Honors, this case is about the ability of a Minnesota company and the employees of that Minnesota company to choose and agree that Minnesota law will apply to any of those individuals. It's also about whether Minnesota's settled choice of law provisions and statutes, and case law rather, will be enforced in a diversity case in Minnesota. The District Court here held that Minnesota's standard choice of law test should not be applied and therefore did not apply that test. Instead... I don't think that's a fair statement. You're saying you should have applied the restatement? I'm saying... The District Court said we're applying modern computers, which purported to apply Minnesota law. It applied the... Our contention is that it did not apply Minnesota law, Your Honor, and that modern computer... Did it apply it or didn't apply it correctly? The District Court applied modern computer, and our contention is that modern computer is not actually Minnesota law. What did our in-bank purport... I've just read it, but I didn't focus on this. What law were we purporting to apply? Minnesota, right? No, Your Honor, Nebraska. In modern computer, which is a restatement state. Okay, but we applied Minnesota law to get there. Well... We applied Minnesota... Didn't we decide that Nebraska law governed? No, we... The modern computer case applied the restatement choice of law test, the four-factor test, which is Nebraska law, and our contention is that the Jepson case, which is a Minnesota Supreme Court case, should apply. Whose choice of law were we applying in modern computers? I'm looking and it's not real clear what I'm reading. Of course, everything was backward in modern computers. Yes, Your Honor. I mean, our contention is that... Who was the venue state? Nebraska. Oh, I believe Minnesota was the venue state. Yeah. But... Okay, so didn't... And we were affirming, I guess, the District Court. Correct. So whose choice of law principles did the District Court apply? Our contention is Nebraska, Your Honor, because it is... Because it is a restatement. Did you dig out and find out? Because... Because that's the whole... We start with whose choice of law do you apply? That's correct, Your Honor. All right, and then what law does that state's choice of law pick? And... That's correct. So you can't answer the first question as to modern computers? No. Well, probably we... Probably they applied Nebraska choice of law. They weren't... They couldn't have. That would have been an error of law. We would agree. The venue state's choice of law principles apply, right? That is... That is correct. The venue state's choice of law provisions apply. That's clear under Minnesota... Brief this, that the modern computer was completely off the track because it flunked the first question. Your Honor, our... You said they picked the wrong... They didn't follow... Correctly follow Minnesota principles, right? That's correct, Your Honor. Right. It does not follow Minnesota principles. So you're saying our in-bank decision was wrong. I'm... Your Honor, I'm saying... That's what you just said. To the extent that that's your... An in-bank decision was wrong and so this panel doesn't have to follow. Your Honor, I'm saying that that interpretation of modern computer would be inconsistent with U.S. Supreme Court precedent. Yes. That may... That may need less controlling on our side. Well, we don't agree, Your Honor, because... Well, you can ask the... You can take that to the in-bank court. If you so prefer, yes. But... No, I... That's what I have to say. We have to say. Well... If you're just arguing modern computer was wrong in its interpretation of Minnesota law, it's still controlling. Give me a circuit case that says otherwise. Well, I would cite you to two Supreme Court cases, which is the Claxton case and the Danes Zimmerman case. Both of which direct the court... Yes, but that's an argument to our court in-bank. You guys blew it in modern computers. You didn't follow Supreme Court law. Well... Does modern computer even apply here, counsel? I would contend that it shouldn't apply and instead that the test should be... Well, that's a different argument. That's why we have multiple arguments. And the second of those arguments is that the appropriate analysis is the Jepson Minnesota Supreme Court analysis under the U.S. Supreme Court's principles. And what makes this case different from modern computers that opens up that issue for us? In this case, Your Honor, the parties have agreed to apply Minnesota law. They have a the Minnesota Jepson case, the Minnesota Supreme Court Jepson case, which should control under the U.S. Supreme Court's precedence in Danes Zimmerman and Claxton. Counsel, I'm wondering if this just isn't unnecessarily overcomplicated. Minnesota courts are committed to the rule that the parties are free to agree on a choice of law provision in their agreements. Why don't we just follow that Minnesota law and see what they agreed on? That's one of the reasons, Your Honor, the modern computer case is not applicable in our judgment. And why under Jepson, which is the standard that should be applied to this case in our judgment, the Minnesota law should be chosen because it's agreed by the parties. That's only true if we're applying Minnesota law and not California law, right? That's correct, Your Honor. We do have to do this choice of law question. That is correct. But Judge Gratz's question is still relevant to that because the fact that the parties chose the Minnesota law should apply is relevant to the choice of law analysis and therefore Minnesota law should apply. Let me ask you this. Is Jepson or any of the Supreme Court cases you're talking about post-date modern computer? The Jepson case does not post-date modern computer, Your Honor. Is it mentioned in modern computer? I don't believe it is. In modern computer, do we specifically say that we're applying Minnesota choice of law provisions? I don't believe so, Your Honor. But we're affirming a district court, so did you go read the district court opinion so we know what was done there? I don't recall whether the district court opinion expressly addressed that, Your Honor. What about the panel opinion? I don't . . . The unbanked court reversed. I don't believe it addressed that question. It said it was applying Minnesota law, Your Honor. That's the decision before you. In this case, though, our contention is . . . And so it used Minnesota law to trump, so to speak, a choice of law contract provision. I'm sorry, Your Honor. The panel opinion in modern computer used Minnesota law, choice of law principles, and substantive law to not apply a choice of law contract provision, a contrary choice of law Nebraska provision. That's the same question that you and I talked about earlier, Your Honor. It's the only way you can understand these cases. Unless you just assume our court doesn't know what it's dealing with. I would certainly not make that assumption, Your Honor. No. I mean, when a case goes unbanked and the panel is overruled, there's a lot of thought given to it. I would agree, Your Honor. If I might, I did want to address . . . So why is . . . I'm still back to what makes the choice of law conclusion different in this case? In this case, the parties have a choice of law provision that chooses Minnesota law . . . Which they had in modern computers. They chose Nebraska law. And under Jepson, it should be . . . Our position is it should be followed under Jepson, Your Honor. You and I don't agree on this point, but that's . . . I think we . . . That's the answer I have. But that's Jepson state law. That's correct, Your Honor. But you've got to answer a choice of law issue before you get to Jepson. Jepson is the choice of law provision. So Jepson is a choice of law case, Your Honor. Jepson gives us the test to you. That's correct. Right. Jepson is the choice of law test. That's correct. And under Day and Zimmerman and Claxon, we must analyze Minnesota law. The Minnesota choice of law test. And under Day . . . Unless the U.S. Supreme Court is wrong, we must follow the state test, which is the Jepson test. I did want to address one more issue before I reserve some time for rebuttal . . . Which is the question of whether these agreements were modified and whether Section 925 applies at all. And our position is that they don't . . . They were not modified. Now, it's undisputed that these agreements were entered into after California Labor Code Section 925's operative date, which is January 1 of 2017. So, everybody agrees on that. What the district court found is that they were modified by the bonus agreements. Now, the bonus agreements don't change any of the terms of the CBP agreements. But, the district court found that they were nevertheless modified for two reasons. The first is the district court found that the bonus agreements contain additional terms that are not present in the CBP agreements, such as compensation and so forth. And that, therefore, those are relevant to the overall relationship between the parties. The district court is correct that they contain additional terms that are not contained within the CBP agreements. But, our position is that that merely means that those agreements are not modified. The fact that additional terms of the parties' relationship, it's in the nature of a separate agreement. Parties can have more than one agreement. An employer can have an agreement with an employee and a second agreement with an employee. That is absolutely permissible. And it's even more clear that there was no modification because these were terms that were not addressed in the original CBP agreements. The fact that they're doing something totally different, totally separate, means that it really is not a modification of the original agreement. It's just a separate agreement. The second thing that the district court said is that the provision of the bonus agreements which reaffirms the CBP agreements is a modification. But, Your Honors, that is turning that provision on its head because the provision merely says they're reaffirmed. It does not say that they are modified in any way, shape, or form. It's in the nature, Your Honors, of an integration clause. Right? The parties are entering into a separate agreement that says this is all of our agreements between the parties, but we're not modifying this previous agreement. If we are going to interpret a clause that merely says we are not modifying, we are reaffirming a previous agreement as a modification, I can't imagine what would not be a modification. That is the very essence of something that is not a modification. And because it's not a modification, Section 925 does not apply at all, and these agreements are not void. I'll reserve the rest of my time. That's the four of the five, right? Yes, I'm sorry. All but the Peacock agreement, Your Honor. Thank you. Mm-hmm. Mr. Abate de Teal, or Ms., excuse me. May it please the Court and Counsel. Your Honors, the C.H. Robinson's appeal raises a number of issues, many of which weren't discussed today but were contained in the briefs. I'd like to focus today on three faulty assumptions that C.H. Robinson makes throughout this appeal. Are you going beyond what's argued this morning? No. My three faulty assumptions actually relate directly to what was argued this morning. The three faulty assumptions are, number one, that the choice of law analysis applied by the District Court was wrong. The District Court should not have applied modern computer. The second faulty assumption is that had the District Court followed Jepson, which C.H. Robinson would like the District Court to have done, that there would have been a different result, and our contention is that the result would have been exactly the same. And then third, the third faulty assumption is that this case is about California law or California's legislators imposing on Minnesota company and employees' right to choose their own choice of law provision. That somehow California is interfering in some compelling interest that Minnesota or these particular parties have in having a Minnesota choice of law provision, which frankly is not true. So I'll start with the first faulty assumption. I want to clarify what I heard earlier about modern computer. That just reverses the bottom line. It doesn't change the inquiry. The inquiry is whether Minnesota would recognize the California interest here as sufficient to override a Minnesota choice of law contract provision. Yes, and here Minnesota would recognize that California's interest is far more significant than Minnesota's and would defer to Section 925. And that's where you get into what's the right choice of law analysis. Correct. How many factors? Is it 43 or 2 or 5? And frankly, in my view, they all lead to California in this case. This is such a unique case where every person involved in this is in Minnesota. They worked and lived exclusively in the state of Minnesota. Sage Robinson cites repeatedly to the Minnesota Court of Appeals decision in the Medtronic case. But in that case, it was a high-level manager who worked in Minnesota. And so Minnesota had an interest in that case. But getting back to what is the correct choice of law test to apply, because that's the first question this court needs to answer, the correct test is the modern computer test. I do want to clarify, though, that that case was venued in the District of Nebraska. It was not actually venued in the District of Minnesota. So it was a Nebraska case. That changes the game then, doesn't it? I hate to acknowledge that fact, but I need to acknowledge that, that it was in Nebraska. And this court applied the risk statements to determine— Which is Nebraska's law. Correct, but the reason— But not Minnesota's. And by the way, I appreciate your candor. Yeah, I disagree that it's not actually Minnesota's. But in that case, yes, they were applying the choice of law test of the venue. However, the reason why it's confusing is that the Eighth Circuit's— Doesn't Minnesota use the choice-influencing considerations choice of law test? The answer to that is sometimes. Minnesota sometimes uses that choice of law test, and it sometimes deviates from that test when there are different circumstances present, such as a choice of law provision, such as when an anti-waiver statute exists. I thought Minnesota generally favored choice of law. Minnesota does generally favor choice of law provisions, but they are not automatic. When do they not honor the party's agreement on choice of law? When do they not honor the party's agreement? When there is, for example, an anti-waiver statute. Are you talking about the California statute? There are other anti-waiver— Minnesota has not addressed the California-specific anti-waiver statute. But in this particular case, the parties agreed on Minnesota law. Why would they look to a California statute? Because our courts in Minnesota say that there still needs to be a choice of law analysis even when there is a choice of law provision, because there may be facts and circumstances where it's not appropriate simply to defer to a choice of law provision. This would be a perfect example where the parties didn't sit down and negotiate the choice of law provision. We ignored a waiver provision in modern computers. That's what it was all about. I would not characterize that as ignoring. I think it was carefully considered, evaluated, and then a decision was rendered based on the facts and circumstances of that case. So let me go back to Jepson, though, for a moment. Jepson was a contract case where there was a choice of law analysis, but there was no choice of law provision in that contract. There was no anti-waiver statute at issue. So the five-factor test was adopted for those situations where there is no choice of law provision, there is no anti-waiver statute. I want to read something from the Minnesota Supreme Court's decision in Jepson. In Jepson, the Minnesota Supreme Court says, These factors were not intended to spawn the evolution of set mechanical rules, but instead to prompt courts to carefully and critically consider each new fact situation and explain in a straightforward manner their choice of law. The lower courts need to wrestle with each situation anew. While prior opinions may be helpful to a court's deliberations,  rather than to seek superficial, factual analogies between cases and import wholesale the choice of law analysis contained therein. That is exactly what the district court did in this case, is rather than impose superficial analysis, the district court looked at the fact that we have a choice of law provision that wasn't bargained for, that was imposed on employees who live and work in the state of California, who are barely out of college, accepting their first job, and the impact of that choice of law provision is to purportedly bind them to non-compete, non-solicitation provisions that are not enforceable in the state of California. So we need to look at that first. Second, we need to consider that there is an anti-waiver statute. And so then the district court rightly looked to, what is the right test to apply given these circumstances? It's not a rigid adherence to the Loeffler factors, which is the basis of the Jepson case. The court looked at other federal district of Minnesota cases. It looked at the Eighth Circuit's cases, not just modern computer, to determine that the correct choice of law test to apply in this situation is the modern computer factors. And it's not just modern computer. You're going to spend all your time on this issue, and then you will lose where I'm worried. I think the district court probably erred in the modification ruling. Okay. You can get there or not. I will get there. But I want to make sure we're not so focused solely on modern computer because this court has applied the modern computer factors to other states, including states that use the Loeffler five-factor test. Arkansas is a state, like Minnesota, that has adopted the five-factor Robert Loeffler test generally for choice of law analysis. In the J.R.T. case, so this court's decision in J.R.T. Inc. versus T.C.B.Y. Systems Inc., 1995, this court again decided that it was appropriate to apply the modern computer factors when you have an anti-waiver provision that conflicts with a choice of law provision. And that was in Arkansas, not a state that follows the restatement. And in that case, the 8th Circuit said Telesave, which is the modern computer factors, was adopted by the 8th Circuit in modern computer system Inc. So it is not limited. Modern computer is not limited to states that follow the restatement. Modern computer, this court has applied it in every circumstance where there's an anti-waiver statute that conflicts with a choice of law provision. How do we know there's an anti-waiver statute that conflicts with a choice of law agreement in this case? Why would we reach out and look at California law as a starting point? As a starting point, because, as I mentioned earlier, the employees lived and worked exclusively in the state of California and raised from the outset of this case that California law should govern this dispute and not Minnesota law. Going to the issue of whether the contracts were modified, the initial contract, the initial non-compete said the consideration for the non-compete is all of the compensation benefits that you will receive through your employment. They then were required to enter into bonus agreements the following year, so after the effective date of Section 925. And in those bonus agreements, they were provided with additional compensation. And in those bonus agreements, it says that the compensation, you're being provided here, is part of the consideration for the non-compete agreement you previously signed. And by receiving this bonus compensation, you are not only reaffirming but agreeing anew to the prior non-compete agreement that was signed. So the reason that that is a modification of the prior agreement is that we have case law from this court defining what a modification is, and this court has said that a modification of a contract is a change in one or more respects which introduces new elements into the details of the contract but leaves the general purpose and effect undisturbed. We also have... What case is that? That is Skoll, S-O-K-O-L and Associates versus Texonic Industries, cited in the briefs, introduces... I want to focus on the part that says introduces new elements into the details of the contract. The original contract said you'll get some compensation. The new contract, the bonus agreement, introduces new elements into the details of the contract. Now you're going to get this additional bonus compensation that was not promised to you earlier. Now you get it, but in exchange for getting it, you need to agree anew. So basically we're reentering into the prior non-compete agreement that you signed. Yeah, that's the point. Renew, again, it's a separate agreement. It's stated as a separate agreement. Yes, it is as though it's its own agreement. I reaffirm and agree anew to abide by all my prior agreements. 25 only applies prospectively. It applies to contracts that are modified after the effective date. So by entering into these bonus agreements, they modified the prior agreement. And the reason why C.H. Robinson does this... That's the whole argument. When the agreement says this is a new agreement, is that a modification? And the answer is yes. They reaffirm and agree anew to the prior agreements. So they are modifying those agreements by adding new bonus compensation as the consideration. This is why C.H. Robinson does it, because they get challenged on consideration in litigation. And so they like to have this belt and suspenders approach of saying, well, consideration was what we gave you at the outset of your employment, but it's also what we give you every single year in this bonus compensation. So they want to use the bonus compensation to support the consideration for the earlier agreement. By doing that, they're modifying the agreement every single time they require employees to sit down and sign these agreements that reaffirm and agree anew to the prior agreements. So every single time they enter into a bonus agreement, they are modifying the prior agreement because they're clarifying, qualifying, and the language from this court, introducing new elements into the details of the contract. The bonus they received in 2018 is not a detail contained in the initial contract, but the bonus agreement is adding that detail to the contract, the prior contract, because C.H. Robinson wants to use that bonus as justification for enforcing the agreement. Counsel, does your approach to this case require this court to address the Dormant Commerce Clause challenge to Section 925? And if not, why not? So I believe the court has to address it since a constitutional issue has been raised. But in our view, there is no constitutional issue. There is nothing about this statute that discriminates against out-of-state employers. This is a statute that applies with equal force to California employers, California-based companies, as it does to companies outside of California. What about its extraterritorial reach in this context? In our view, it has no reach in this context. All of the cause of action arose in California. This concerns entirely a California dispute. C.H. Robinson has every right and every ability to attempt to enforce agreements in the state of California with its employees. By bringing this lawsuit out here in Minnesota, Section 925 isn't reaching out and interfering with C.H. Robinson's ability to run its business outside of Minnesota. Simply telling C.H. Robinson that if you want to have employees in the state of California, you have to play by our rules. The reach is quite substantial in terms of the competition between C.H. Robinson and the new employer. They're nationwide competitors, right? They are nationwide competitors. And they're brokering deals that they may pass through California, but you wouldn't call the deals California deals. True, but this case doesn't concern their competition generally. It concerns whatever competition they have in the state of California. How about the tort claim against the new employer? The tort claim is solely premised on these five individuals who are within the state of California. That's all this case is about. There is no broader claim against traffic tech that reaches beyond the five employees in the state of California. The implications of tortiously acquiring five California employees who are brokering deals all over the country and all over the world, you can't say this only has a Southern California impact or wherever. I still maintain it only has a California impact. There might be some broader point they're trying to make in the competitive industry. That's outside of this case. I maintain that, but I think if you view the competition among the employers, it's patently false what you maintain. You can say that as to the individual employees with a straight face, but I'm not sure about the competition between the brokerage firms. I'm out of time, but may I respond? Yes. So two responses. One is that the competition that this case is about. First of all, I don't know that there's anything in the record that truly establishes competition beyond the fact that there's a – You're out of your time. Just give a quick response. Okay. A quick response. Not a whole new argument. Sure. The quick response is that the competition at issue in this case, if there is any, is within the state of California based on the deposition testimony, based on the record testimony. Everybody lived and worked in California, and the customers at issue were in California. Second of all, the district court found, and this finding has not been challenged on appeal, which is important, that there's no record evidence, or there's not a genuine dispute of material fact, as to whether Traffic Tech intentionally interfered with the contracts. So that finding is not challenged on appeal. There's not only tortious interference with contract. Okay. Thank you. You guys would love to talk all day about it. Well, that's certainly true, Your Honor. We can agree on that. Just a few points in rebuttal, Your Honor. First, briefly on the choice of law issues. Counsel suggested that Minnesota courts routinely follow anti-waiver provisions, and that's accurate. They do. But only as part of the choice of law analysis in the Jepson case, and generally speaking, they apply Minnesota's anti-waiver statute. Counsel doesn't cite a case in which a Minnesota court applied another state's anti-waiver statute to apply that state's law instead of Minnesota's law, which is just another illustration of why under Jepson, Minnesota law is the appropriate law to apply here. Counsel also suggested that Jepson is inapplicable in a choice of law context, if there is a choice of law provision agreed upon by the parties. And counsel accurately cites the Minnesota Supreme Court's position on Jepson in that issue. But that's because the Minnesota Supreme Court is suggesting that you simply follow the choice of law provision agreed upon by the parties, and Minnesota courts repeatedly and routinely do that. Of course, if you do that here, you apply Minnesota law. So I would agree that, you know, in the case of an agreement to apply a particular state's law, and that in this case means the court should apply Minnesota law. But the court, of course, did not do that. Counsel doesn't cite a case in which a choice of law provision applying a state other than Minnesota law is followed in that regard. I want to move on to the modification question. Counsel stated that there was a separate agreement, and I think Judge Loken's point that that is a separate agreement is really telling here. There is a separate agreement by the parties, and it does reaffirm the party's previous agreement to the extent that counsel is arguing that the parties agreed again after the original CBP agreements to abide by the non-competes. Maybe so, but that's a separate agreement. It doesn't mean that this first agreement that is agreed upon by the parties was modified. No terms of that agreement were changed. And in fact, the case, the so-called case that counsel cites, counsel says, as this court said, change in one or more respects. Okay? Adding details, for example. But the key point there is change, right? This court requires that there be a change in order for there to be a modification. And finally, just briefly on the Dormant Commerce Clause question that Your Honor raised. Can I just ask you on the modification? Sure. Yes, Your Honor. Are there California cases interpreting the way in which 925 applies only prospectively in this that would be relevant here? I haven't read 925 carefully. Does it say modification? It does say modification. Okay. Has that been interpreted by a California appellate? We look for California cases that were applicable to this, that were similar facts, and did not identify any California cases that we thought were such that would shed light on that issue. Thank you. So thank you very much, Your Honors. I appreciate your time today. Very good. The case has been thoroughly briefed. It's complicated. Argument's been helpful, and we'll take it under advisement.